United States District Court
Southern District of Texas

**ENTERED**

December 21, 2016

David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MATTHEW LESLIE HULL, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 3:15-CV-313 |
| | § | |
| LORIE DAVIS, Director, Texas | § | |
| Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Matthew Leslie Hull (TDCJ #00173761) has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. The Respondent has filed a motion to dismiss (Dkt. 12) accompanied by the relevant state-court records (Dkt. 10), to which Hull has responded (Dkt. 13 and Dkt. 16). After reviewing all of the pleadings, the record, and the applicable law, the Court agrees with the Respondent and concludes that Hull's petition must be dismissed as time-barred. In the alternative, the Court will dismiss Hull's claims on their merits. *See* 28 U.S.C. § 2254(b)(2) (giving the district court the power to deny a habeas application on the merits notwithstanding the applicant's failure to exhaust state remedies).

## I.   BACKGROUND

Hull was accused of striking a drug dealer repeatedly in the head with an object (the object was never definitively identified, though Hull's indictment says it was a hammer) while Hull's girlfriend took money and drugs from the dealer's pockets (Dkt.

10-12 at pp. 125–28; Dkt. 10-23 at p. 35). A Galveston County jury found Hull guilty on one count of aggravated robbery with a deadly weapon (Dkt. 10-13 at p. 65). *See* Galveston County Criminal Case Number 10CR3636. The Fourteenth Court of Appeals of Texas affirmed Hull's conviction. *See Hull v. State*, No. 14–11–00864–CR, 2012 WL 2783183 (Tex. App.—Houston [14th Dist.] July 10, 2012, no pet.). Hull did not file a petition for discretionary review with the Texas Court of Criminal Appeals.

On August 5, 2013, Hull filed a state habeas petition in which he argued that his appointed appellate counsel was ineffective because she did not inform him of the Fourteenth Court's decision, depriving Hull of the chance to file a timely petition for discretionary review (Dkt. 10-23 at pp. 9, 16). The trial court requested an affidavit from Hull's counsel (Dkt. 10-23 at pp. 21–22). In her affidavit, Hull's counsel testified that she sent Hull a letter on July 12, 2012 (two days after the Fourteenth Court issued its opinion) informing Hull of both the Fourteenth Court's decision and his right to file a petition for discretionary review (Dkt. 10-23 at p. 23). Hull's counsel further testified in her affidavit that she informed Hull in her letter of his specific deadline for filing a petition for discretionary review (Dkt. 10-23 at p. 23). The trial court entered specific fact findings that the affidavit of Hull's counsel was "correct and credible" and that Hull's counsel "did notify [Hull] about his right to file a petition for discretionary review" (Dkt. 10-23 at p. 31). The Texas Court of Criminal Appeals denied habeas relief on March 5, 2014 (Dkt. 10-20 at p. 1). Hull moved for reconsideration on March 25, 2014 (Dkt. 10-22 at p. 10); the Texas Court of Criminal Appeals dismissed the motion on April 22, 2014. *See* Texas Court of Criminal Appeals Case Number WR-80,985-01.

On October 22, 2015, Hull filed this federal habeas petition, raising the following grounds:

(1) Hull's appellate counsel rendered ineffective assistance by failing to inform him that the Fourteenth Court of Appeals of Texas had affirmed his conviction;

(2) Hull's conviction was supported by insufficient evidence;

(3) The State withheld blood samples that Hull seeks to submit to DNA testing; and

(4) Hull's trial counsel rendered ineffective assistance.

## II.   THE ONE-YEAR STATUTE OF LIMITATIONS

This federal habeas petition is subject to the one-year limitations period found in 28 U.S.C. § 2244(d). *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998). Section 2244(d) provides as follows:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

   (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

   (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)   The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Essentially, subsections (B), (C), and (D) outline exceptions to the general rule, set forth in subsection (A), that a federal habeas petition must be filed within one year after the petitioner's conviction becomes final. *Flanagan*, 154 F.3d at 198. Section (d)(2) tolls limitations during the pendency of a properly filed state habeas petition. *Id.*

### A. This petition is untimely because Hull filed it at least eighteen months after the end of the limitations period.

As noted above, Hull appealed his conviction to the Fourteenth Court of Appeals of Texas, which issued an opinion affirming the trial court on July 10, 2012. Hull did not seek discretionary review from the Texas Court of Criminal Appeals, so his conviction became final on August 10, 2012. *See* TEX. R. APP. P. 68.2(a); *see also Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) (holding that if the defendant does not pursue relief on direct appeal through his state's highest court, "the conviction becomes final when the time for seeking further direct review in the state court expires"). Hull therefore had until August 10, 2013 to file this petition, unless he can point to a different trigger date or a reason for tolling.

Hull's state habeas application, which he filed on August 5, 2013, did toll limitations because he filed it five days before his deadline. When the state habeas

application was denied on March 5, 2014, Hull's new deadline to get his federal habeas petition on file was March 10, 2014. Hull's motion for reconsideration did not toll limitations because he filed that motion on March 25, 2014, fifteen days after his limitations period expired. *See Gordon v. Dretke*, 107 Fed. App'x 404, 406 (5th Cir. 2004). Even if the motion for reconsideration had tolled limitations, the Texas Court of Criminal Appeals dismissed the motion on April 22, 2014, which would have made April 27, 2014 the latest possible deadline for Hull to file his federal habeas petition. *Lookingbill v. Cockrell*, 293 F.3d 256, 261–62 (5th Cir. 2002) (holding that, if a motion for reconsideration is filed in time to toll limitations, that tolling ends on the date on which the Texas Court of Criminal Appeals decides the motion). Hull did not file his federal habeas petition until October 22, 2015—eighteen months later.

### B. Hull is not entitled to use the "actual innocence" gateway.

To counter the Respondent's motion to dismiss, Hull invokes the "actual innocence" gateway (Dkt. 16 at p. 1). A prisoner who has filed an untimely federal habeas application can overcome the one-year statute of limitations with a convincing showing of "actual innocence." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). The actual-innocence exception described in *McQuiggin* is grounded in the miscarriage-of-justice exception—*Id.* at 1932—which is a narrow exception applicable only in extraordinary cases. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). Thus, tenable actual-innocence claims are "rare[.]" *McQuiggin*, 133 S. Ct. at 1928. "The gateway should open only when a petition presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that

the trial was free of nonharmless constitutional error." *Id.* at 1936 (quotation marks omitted; quoting *Schlup v. Delo*, 115 S. Ct. 851, 861 (1995)).

For the purposes of the miscarriage-of-justice analysis, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). As the Fifth Circuit has further explained, "actual innocence" means "factual" as opposed to "legal" innocence, with "legal" innocence meaning that a constitutional violation by itself requires reversal and "factual" innocence meaning that the person actually did not commit the crime. *Johnson v. Hargett*, 978 F.2d 855, 859–60 (5th Cir. 1992); *see also Calderon*, 523 U.S. at 559 ("The miscarriage of justice exception is concerned with actual as compared to legal innocence.") (internal brackets and quotation marks omitted).

*McQuiggin* does not save Hull's petition. The *McQuiggin* exception only "applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted the petitioner." *McQuiggin*, 133 S. Ct. at 1933. Hull has not presented any new evidence, let alone new evidence that undermines this Court's confidence in the outcome of Hull's trial.

**C. Hull is not entitled to equitable tolling.**

Hull also requests that the Court apply equitable tolling (Dkt. 16 at p. 5). A habeas petitioner is entitled to equitable tolling if he shows: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). The determination

of whether equitable tolling is appropriate is, of course, governed by rules and precedent; but it often must be made on a case-by-case basis. *Id.* at 649–50.

Hull claims that the Court should apply equitable tolling because he did not receive notice from his appointed appellate counsel that his conviction had been affirmed until it was too late for him to file a petition for discretionary review with the Texas Court of Criminal Appeals (Dkt. 16 at pp. 4–5). According to Hull, under Texas law governing post-conviction relief, Hull's failure to file the petition prevented him from exhausting certain claims (Dkt. 16 at p. 5). As noted above, Hull's counsel swore out an affidavit, which the state courts considered credible, testifying that she mailed Hull a letter informing him of the affirmance of his conviction; his right to file a petition for discretionary review; and his deadline to file a petition for discretionary review (Dkt. 10-23 at p. 23). Hull claims that he filed two unsuccessful open records requests (the second of which was turned down on December 2, 2014) seeking his prison unit's mail log in order to prove that his counsel never contacted him. (Dkt. 16 at pp. 4–5).

The Court will not apply equitable tolling. Regardless of whether he got a letter from his counsel, Hull did not diligently pursue his rights; he waited until eighteen months after the denial of his state habeas petition to file his federal habeas petition. *See, e.g., Melancon v Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001) (holding that a four-month delay between the state supreme court's denial of relief and the petitioner's filing of his federal habeas petition indicated that the petitioner had not diligently pursued his rights); *Coleman v Johnson*, 184 F.3d 398, 403 (5th Cir. 1999) (holding that a six-month delay between the denial of the petitioner's state habeas application and the filing of his federal

habeas petition indicated that the petitioner had not diligently pursued his rights). Hull's explanation for the delay is that he was attempting to secure evidence, in the form of the prison mail log, to counter his counsel's affidavit (Dkt. 16 at pp. 4–5). However, even if this explanation were sufficient (and the Court is not saying that it would be), the delay would still be almost eleven months because Hull's second open records request for the prison mail log was rejected on December 2, 2014 (Dkt. 16 at pp. 4–5). Even under the most generous view of the facts the Court can conceive, Hull's delay in filing his federal habeas petition was simply too long.

## III.   THE MERITS

In the alternative, even if they are not time-barred, Hull's claims fail on their merits.

### A. Hull has not stated a claim for ineffective assistance of appellate counsel.

Hull's first claim has two components: (1) his appellate counsel rendered ineffective assistance by failing to notify him of his deadline for filing a petition for discretionary review; and (2) the Texas state courts violated his Constitutional rights by finding his appellate counsel's affidavit credible in the absence of any corroborating evidence (Dkt. 1 at pp. 5–6). This amounts to a claim that the Texas courts' determination that Hull's counsel did in fact notify him of his deadline was unreasonable in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(2). The Supreme Court has emphasized that the term "unreasonable" as used in the federal habeas statute means "objectively unreasonable," not simply "erroneous" or "incorrect." *See Williams v. Taylor*, 529 U.S.

362, 409–12 (2000). The Texas courts' fact findings are presumed correct, and Hull must present clear and convincing evidence to this Court in order to rebut the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1).

Hull has not met his burden, but the correctness of the state courts' factual determinations is beside the point anyway. Even if Hull's counsel did fail to notify him, the Fifth Circuit has held that a defendant seeking to establish that his appellate counsel was ineffective must do more than show that counsel deprived the defendant of the opportunity to file a petition for discretionary review by failing to timely notify him of the outcome of his direct appeal.[1] *Moore v. Cockrell*, 313 F.3d 880, 882 (5th Cir. 2002); *see also Holloway v. Quarterman*, Civil Action No. H-07-2069, 2008 WL 90141, at \*15 (S.D. Tex. Jan. 4, 2008) (J. Atlas). "When a state grants a criminal defendant an appeal of right, the Constitution requires only that the defendant's claims be 'once . . . presented by a lawyer and passed upon by an appellate court.'" *Jackson v. Johnson*, 217 F.3d 360, 364–65 (5th Cir. 2000) (quoting *Ross v. Moffitt*, 417 U.S. 600, 614 (1974)). Hull's appeal of right ended once the Fourteenth Court of Appeals issued its decision, so his right to effective appellate counsel ended then as well. Because appeal was discretionary at the time he says that he was deprived of effective counsel, Hull has not stated a cognizable claim on federal habeas. *See Jackson*, 217 F.3d at 364–65 ("Jackson cannot have received constitutionally deficient counsel on his motion for rehearing . . . if he had no constitutional right to counsel for purposes of filing a rehearing motion. A criminal

---

[1] Hull has not claimed that his appellate counsel's representation was otherwise deficient.

defendant does not have a constitutional right to counsel to pursue discretionary state appeals.") (quotation marks and footnotes omitted).

### B. Hull's conviction is supported by sufficient evidence.

Hull's second claim is a challenge to the sufficiency of the evidence supporting his conviction (Dkt. 1 at p. 7). Hull, though he challenged the jury's deadly-weapon finding on direct appeal, here seems to be attacking the identity element; he argues that "the record his [sic] wholly and totally devoid of any evidence that the movant committed the offenses" (Dkt. 1 at p. 7). In order to obtain habeas relief on this ground, Hull must show that, "upon the record evidence adduced at the trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The evidence is viewed in the light most favorable to the prosecution. *Id.* at 319. The essential substantive elements of the criminal offense are established by the state's criminal law. *Id.* at 324 n.16; *Hughes v. Johnson*, 191 F.3d 607, 619 (5th Cir. 1999).

Hull was convicted under Section 29.03 of the Texas Penal Code. A person commits an offense under that statute when he or she commits robbery and uses or exhibits a deadly weapon. TEX. PENAL CODE § 29.03(a)(2). A person commits robbery when he or she commits theft and, with intent to obtain or maintain control of the property, either: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. TEX. PENAL CODE § 29.02(a). A "deadly weapon" can be: (1) anything manifestly designed, made, or adapted for the purpose of inflicting death or

serious bodily injury; or (2) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. TEX. PENAL CODE § 1.07(17).

The evidence presented by the State at Hull's trial meets the *Jackson* standard. The victim testified that two people physically attacked him in order to take money and drugs from him. The robbery victim was a drug dealer who knew Hull's girlfriend and knew where Hull and his girlfriend lived; and he testified that Hull's girlfriend was an occasional customer who claimed to want drugs on the night of the attack (Dkt. 10-12 at pp. 117, 133). The victim got into a car (which belonged to Hull) driven by Hull's girlfriend (Dkt. 10-12 at pp. 119, 186). While the victim was sitting in the car and waiting for Hull's girlfriend to pay for the drugs, Hull—whom the victim identified both in a photo lineup and in open court—surprised the victim from behind and struck him on the head multiple times with an object "with a blunt force so powerful that [the victim] really believe[d] that [he] was about to die" (Dkt. 10-12 at pp. 125–28, 140–45). The first blow struck by Hull was so forceful that it caused momentary paralysis (Dkt. 10-12 at p. 119). During the ensuing struggle, the victim saw Hull's face and felt an object in Hull's hand (Dkt. 10-12 at pp. 126–27). The victim sustained head wounds in the attack that medical personnel treated with 21 staples and 11 stitches (Dkt. 10-12 at p. 147). The emergency room personnel also ran a battery of tests, including an MRI and a CT scan, to ascertain the scope of the victim's head injuries (Dkt. 10-12 at p. 147; Dkt. 10-15; Dkt. 10-16). The tests found a cervical spine fracture (Dkt. 10-15 at pp. 5, 14–15).[2]

---

[2] Although the medical records entered into evidence do not definitively link the fracture to the attack, under *Jackson* a federal court "may find the evidence sufficient to support a conviction

The evidence supports a finding that the victim sustained multiple blows to his head and neck at the hands of Hull that required medical treatment and concerned the treating medical providers so much that they conducted an extensive evaluation of the victim. The evidence also supports a finding that Hull struck the victim with some object that was capable of causing death or serious bodily injury and did so in order to obtain or maintain control of the money and drugs that Hull and his girlfriend stole. Given the elements established by Texas law, the Court cannot say that no rational trier of fact could have found proof of guilt beyond a reasonable doubt. "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts." *Coleman v. Johnson*, 132 S.Ct. 2060, 2064 (2012) (quotation marks omitted). "[T]he only question . . . is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Id.* at 2065. The jury's verdict was rational in light of the evidence presented. Hull's second claim lacks merit.

### C. Hull's request for DNA testing of the "reddish substance" does not state a cognizable claim.

Hull's third claim is that the prosecution "with-held [sic] Blood evidence that police found on the window" of Hull's car (Dkt. 1 at p. 8). Hull seeks "all blood evidence and DNA testing recurrent that was with-held [sic] by the Galveston Police Department"

---

even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991). In any event, the *Jackson* standard is met here whether the attack itself fractured the victim's spine or not.

(Dkt. 2 at p. 7). There may not actually be any "blood evidence." One of the investigating officers testified that there was a "reddish substance" on the passenger-side window of Hull's car (Dkt. 10-12 at pp. 190–91). There is no indication in the record that the "reddish substance" was ever taken to or tested in a crime lab or otherwise catalogued as evidence; and the trial judge sustained Hull's objection to the officer's identifying the "reddish substance" as blood (Dkt. 10-12 at pp. 190–91). The Court construes Hull's third claim as a request that the Court compel DNA testing of that evidence.

The request for DNA testing is not cognizable. The Supreme Court recently noted that it has never recognized habeas as an available remedy where the relief sought does not either terminate custody, accelerate the future date of release from custody, or reduce the level of custody. *Skinner v. Switzer*, 562 U.S. 521, 534 (2011) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 86 (2005) (Scalia, J., concurring)). If Hull succeeded on his claim for post-conviction DNA testing, his success "would not necessarily spell speedier release"—for instance, the test results, assuming there is any evidence to test, would actually further inculpate Hull if the "reddish substance" turned out to be the victim's blood—so Hull's claim should have been brought under 42 U.S.C. § 1983. *Id.* at 535 n. 13.

That said, construing Hull's third claim as a Section 1983 claim would be problematic for at least two reasons. First, in this proceeding, Hull has only brought claims against Lorie Davis, the Director of the Correctional Institutions Division of the Texas Department of Criminal Justice. Davis is not the proper defendant; a claim for DNA testing should be brought against the custodian of the evidence sought to be tested,

usually a district attorney's office or a crime lab. *Emerson v. Thaler*, 544 Fed. App'x 325, 328 n. 2 (5th Cir. 2013) (citing cases as examples).

Second, there is no indication in the record that Hull filed a motion for forensic DNA testing under Chapter 64 of the Texas Code of Criminal Procedure. There is no freestanding substantive due process right to post-conviction DNA testing for the purpose of seeking exculpatory evidence. *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 72–75 (2009). A state prisoner seeking post-conviction DNA testing has the right "to show that the governing state law denies him *procedural* due process," but the Supreme Court has characterized that right as a "slim" one. *Skinner*, 562 U.S. at 525 (emphasis added). Given the Supreme Court's holdings, the federal courts "will intervene only if the State's framework offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental fairness in operation." *Garcia v. Castillo*, 431 Fed. App'x 350, 353 (5th Cir. 2011) (quotation marks omitted). Having never invoked Texas's framework for obtaining DNA testing, Hull cannot possibly show that that framework operated in such a way as to deny him procedural due process. *See Osborne*, 557 U.S. at 71 ("These procedures are adequate on their face, and without trying them, Osborne can hardly complain that they do not work in practice."); *Emerson*, 544 Fed. App'x at 328 ("Because the state has not actually denied his motions for DNA testing, Emerson's claim that Texas violated his due process rights by denying him DNA testing was correctly dismissed for failure to state a claim.").

### D. Hull did not receive ineffective assistance of counsel at trial.

Hull's fourth claim is that he received ineffective assistance of counsel at trial. Hull argues that, "had his attorney conducted an investigation and called expert witnness [sic] the outcome would have been different" (Dkt. 1 at p. 10).

Claims of ineffective assistance of counsel are governed by the well-established, and demanding, standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail, a criminal defendant must show that counsel failed to act reasonably considering all the circumstances and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment; and the defendant cannot meet the "reasonable probability" standard without showing a substantial, as opposed to conceivable, likelihood of a different result. *Id.*

The Court first notes that Hull's trial counsel subjected the victim to a vigorous cross-examination. The victim originally told investigators that he had been attacked by "three skinheads,"[3] and Hull's trial counsel used the victim's prior statements and criminal history to impugn his credibility (Dkt. 10-12 at pp. 148–62, 165–66). Hull's trial

---

[3] The victim testified at trial that he initially lied to investigators because he wanted to personally retaliate against Hull and his girlfriend without police interference (Dkt. 10-12 at pp. 132–34).

counsel also repeatedly emphasized, through cross-examination and jury argument, that the prosecution had no forensic evidence to corroborate the victim's testimony and that the State's investigators had lost Hull's car—the scene of the crime—at the impound yard because of an apparent miscommunication within the police department (Dkt. 10-12 at pp. 201–02, 210–12; Dkt. 10-13 at p. 18). Hull points to no deficiency in how his counsel tried the case, and the Court sees none.

As for Hull's specific claims that his trial counsel should have conducted a more extensive investigation and hired an expert witness, those claims fail for lack of specificity. "An applicant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010) (quotation marks omitted). Hull offers no such details; he does not identify either what information a more extensive investigation would have turned up or how that information would have changed the outcome of his trial.

Vagueness similarly dooms Hull's claims that his trial counsel should have presented an expert. "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). The Fifth Circuit "require[s] this showing for claims regarding uncalled lay and expert witnesses alike." *Id.* Hull, again, offers no such details.

Hull's claims fail on their merits.

## IV.   CERTIFICATE OF APPEALABILITY

The federal habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), codified as amended at 28 U.S.C. § 2253. Therefore, a certificate of appealability is required before an appeal may proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the Court concludes that reasonable jurists would not find its assessment and ruling debatable or wrong. Because the petitioner does not otherwise allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V.   **CONCLUSION**

Based on the foregoing, the Court **ORDERS** as follows:

1.   The Respondent's motion to dismiss (Dkt. 12) is **GRANTED**. All other pending motions are **DENIED** as moot.

2.   The habeas corpus petition is **DENIED**, and this case is **DISMISSED** with prejudice.

3.   A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Galveston, Texas, on _December 20_, 2016.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE